CHARLES E. BRAINARD *v.* SMYTH MANUFACTURING COMPANY ET AL.

COTTER, C. J., LOISELLE, BOGDANSKI, LONGO and PETERS, Js.

Argued May 9—decision released July 3, 1979

*Robert U. Sattin,* for the appellant (plaintiff).

*Ronald J. Cohen,* for the appellees (defendants).

COTTER, C. J. On October 14, 1977, upon the plaintiff's application for a prejudgment remedy, the court *(Parskey, J.)* after a hearing, found probable cause to sustain the validity of the plaintiff's claim and ordered the issuance of certain prejudgment remedies as requested, to secure the sum of

$100,000.[1] Thereafter, on May 5, 1978, in response to defendants' application for modification or dissolution of the attachment made by a deputy sheriff pursuant to the court's October 14, 1977, order, the court *(Mancini, J.)* dissolved the attachment as to one item of the machinery placed under attachment, on condition that the sum of $95,000 be turned over to the attaching deputy sheriff as substitution for the attachment on that machine, to be held by him according to law. The plaintiff did not appeal from that order.

Subsequently, on July 5, 1978, the named defendant applied for another modification or dissolution. Pursuant to that motion, the court *(O'Brien, J.)*, on July 14, 1978, ordered "[t]hat the attachment on any particular machine described in Exhibit A attached . . . be dissolved on condition that the sum reflected under 'Expected Purchase Price' listed in Exhibit A for said machine be turned over to the attaching sheriff. This order shall apply only with respect to the machines listed on Exhibit A attached . . . [and] if The Smyth Manufacturing Company receives a purchase price for any specific machine in excess of the 'Expected Purchase Price' shown on Exhibit A said excess shall also be turned over to the attaching sheriff."

The parties stipulated that the machinery and equipment and the substituted property were subject to a security interest in favor of the Connecticut Bank and Trust Company which substantially exceeds the value of the attached property. The trial court did not adjudicate priorities between the

---

[1] This cause of action, brought by a former president of the named defendant, alleges a breach of his claimed right under a pension plan. The merits of the lawsuit are not before the court in this proceeding.

claimed security interests in the machinery or the proceeds from its sale; the plaintiff had argued that the court was without authority to adjudicate such priorities.

The procedure for dissolution of attachment by substitution of bond or lien is found in General Statutes § 52-304, which provides that "[w]hen any estate is attached, or any debt or effects taken by process of foreign attachment, the defendant may apply in writing to the court in which such action may be pending, or any judge thereof, to dissolve the attachment lien upon the substitution of (a) a bond with surety or (b) a lien on any other property of the defendant which has an equal or greater net equity value than the amount secured by such attachment."

The trial court, in substituting other property of the defendants, properly followed § 52-304 and also § 52-307 which provides, in pertinent part, that "[a]ll persons interested may be heard in relation to the amount and sufficiency of the bond or the substitute lien offered by the defendant. Such amount shall equal the value of the estate which the process directed to be attached."

The value of the defendants' estate under the initial attachment amounted to its fair market value less prior security interests. The court in ordering the substitution did not change the relative position of either party in the property nor did it diminish the amount secured by the plaintiff's attachment. There is nothing before this court which establishes that the plaintiff's interest in the property was $100,000. The order merely substitutes money for the fair market value of each machine which has

been sold and, in effect, creates an escrow fund for the benefit of those whose property rights are to be determined.

The purpose of § 52-304 was explained at the time of its passage: "The intent of the bill, Mr. Speaker, is to make an attachment what it has always been meant to be—security for a claim. Presently, as written, the statute is used as a weapon over the head of a defendant landowner who wishes to sell his property and can provide equal or greater security but is unable to do so due to the unreasonableness of a plaintiff." 14 H.R. Proc., Pt. 2, 1971 Sess., p. 646 (remarks of Rep. George C. Guidera). The legislative intention, expressed in the language used, is a controlling factor in the interpretation of a statute, and the application of common sense to the language is not to be excluded. *United Aircraft Corporation* v. *Fusari,* 163 Conn. 401, 410–11, 311 A.2d 65.

The court's order did not deprive the plaintiff of its priority in the machinery or its proceeds secured pursuant to the initial attachment. The cash held in escrow by the deputy sheriff is subject to the same claims as the original property, except that that property has been converted into an equivalent money value which has an equal or greater net equity value than the amount secured by such attachment, and thus satisfies the requirements of General Statutes § 52-304.

There is no error.

In this opinion the other judges concurred.